**James Martin PACK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–89–1026.**

Court of Criminal Appeals of Oklahoma.

Oct. 9, 1991.

Sid Conway and Terry Oliver, Barry Derryberry, Asst. Public Defenders, Tulsa, for appellant.

Donna Priore, Asst. Dist. Atty., Tulsa, Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

James Martin Pack, appellant, was tried by jury in Tulsa County District Court and convicted of First Degree Burglary (Count I) and Assault and Battery With Intent to Kill (Count III) in Case No. CRF–88–3311, and First Degree Burglary in Case No.

CRF–88–4220, each After Former Conviction of a Felony. In accordance with the jury's recommendation, appellant was sentenced to seventy-five (75) years imprisonment on Count I, ten (10) years imprisonment on Count III, and ten (10) years imprisonment for his conviction in Case No. CRF–88–4220. The trial court directed that the sentences be served consecutively and ordered victims compensation assessments of $10,000.00 each for the convictions in Case No. CRF–88–3311 and $5,000.00 for the conviction in Case No. CRF–88–4220. From these Judgments and Sentences, appellant appeals to this Court.

Appellant's convictions arise from two criminal episodes. As his first assignment of error, appellant asserts that the two cases should not have been tried together and that such procedure deprived him of a fair trial. The facts of appellant's crimes are set forth below.

In Case No. CRF–88–3311, the State presented evidence that on August 4, 1988, appellant and two other men approached seventy-six (76) year old Loren Boggs at his north Tulsa duplex and asked if he needed any work performed at his home. Following some discussion, Mr. Boggs contracted with the men to paint the duplex and replace some windows. The next day appellant and one of the men began working on the home. At approximately 9:30 that evening, Mr. Boggs heard strange noises from his bedroom. When Boggs entered the bedroom and approached the window, the air-conditioner unit "caved in" on him, knocking him to the floor. A man then came through the window and attacked him. Boggs was struck numerous times and ultimately lost consciousness. When he awoke, Boggs discovered that his billfold, which contained about one hundred dollars ($100.00), was missing. Boggs later identified appellant as his assailant.

In Case No. CRF–88–4220, the State established that during the early evening hours of October 3, 1988, appellant went to the north Tulsa home of seventy-nine (79) year old J. T. Banks, informed Banks that he had done some work for him in the past, and asked the elderly man if he had any work recommendations. Because Banks had failing vision and hearing, he opened his storm door one (1) to two (2) feet in an attempt to see and hear appellant more clearly. Thereupon, appellant pushed his way into the house, tied Mr. Banks' hands and feet, and placed a blanket over Bank's head. Appellant then took Banks' billfold, which contained forty-six dollars ($46.00), approximately twenty-five dollars ($25.00) in change, and some coin purses containing old coins.

Although Mr. Banks could not identify his attacker, circumstantial evidence established appellant as the perpetrator. On October 4, 1988, police officers arrested appellant and found two coin purses in his possession. Pursuant to a search of appellant's home, officers also discovered a ledger notebook similar to one left at Mr. Banks' house. Appellant acknowledged ownership of both of the notebooks, but claimed that he lost one of them several months earlier. Appellant also claimed that he obtained the coin purses in a drug deal on the day of his arrest. Mr. Banks testified that appellant had previously performed yard work for him.

This Court has held that "joinder of separately punishable offenses is permitted if the separate offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions." *Glass v. State*, 701 P.2d 765, 768 (Okl.Cr. 1985). With respect to a series of criminal acts or transactions, "joinder of offenses is proper where the counts so joined refer to the same type of offenses occurring over a relatively short period of time, in approximately the same location, and proof as to each transaction overlaps so as to evidence a common scheme or plan." *Id.*

In *Middaugh v. State*, 767 P.2d 432 (Okl. Cr.1988), the appellant alleged that the trial court abused its discretion in denying his pre-trial motion for severance of offenses. A majority of this Court, in applying the *Glass* standard, found that the facts of the case supported the finding that the charged offenses were part of a series of criminal acts. The crimes, three counts of Obtaining Merchandise and/or Money by Means

of False or Bogus Checks, took place over a six (6) week period in two towns located within the same county. Furthermore, because proof as to each transaction overlapped, the majority determined that the manner in which the appellant passed the bad checks suggested a common scheme or plan. *Middaugh,* 767 P.2d at 435.

In applying *Glass* and *Middaugh*[1] to the facts of this case, we find that the trial court did not abuse its discretion in denying appellant's motion for severance of offenses. Both of the criminal episodes in this case involved the burglary of elderly men for whom appellant had worked. Both men were home alone during evening hours, their homes were located within five miles of each other in north Tulsa, and the crimes were committed approximately eight weeks apart. On the basis of the foregoing, appellant's first assignment of error is dismissed.

■ As his second assignment, appellant contends that the State presented insufficient evidence to sustain the burglary charge in Case No. CRF–88–4220. Specifically, appellant maintains that the prosecution failed to prove that he forcibly broke into victim J. T. Banks' home. We disagree.

Title 21 O.S.1981, § 1431(1), provides that the crime of First Degree Burglary is committed by:

Every person who breaks and enters the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein ... [b]y forcibly bursting or breaking the wall, or an outer door....

The word "breaking" has been defined as "any act of physical force, however slight, by which obstructions to entering are removed." *Brecheen v. State,* 732 P.2d 889, 893 (Okl.Cr.1987). *See also Oklahoma Uniform Jury Instructions—Criminal* (OUJI–CR) 516.

In the present case, Mr. Banks testified that his front door was open one (1) to two

(2) feet when appellant pushed the door further open to gain entry. (Tr.91). Under the definitions set forth above, we find that any rational trier of fact could have found beyond a reasonable doubt that appellant forcibly broke into Mr. Banks' home. *See Sanchez v. State,* 665 P.2d 1218 (Okl.Cr. 1983).

■ Appellant was originally charged with three (3) felony offenses in Case No. CRF–88–3311. At preliminary hearing, appellant was bound over for trial on Counts I and III, while Count II was dismissed. In the jury instructions and verdict forms at trial, the court referred to the charged offenses in Case No. CRF–88–3311, over defense counsel's objections, as "Count I" and "Count III." As his third assignment of error, appellant contends that such procedure erroneously caused the jury to speculate as to the existence of a "Count II."

As the State correctly submits, the trial court's instructions and verdict forms simply referred to Counts I and III as they were alleged in the Amended Information. *See* O.R.29. Had the instructions and verdict forms listed the charges as something other than Counts I and III, they would not have conformed to the Amended Information and would therefore have been defective. Furthermore, to avoid any possible speculation on the part of the jury, appellant could have voiced an objection to the Amended Information prior to trial and requested that the counts be renumbered. However, he did not choose to take such action. Absent an objection or jurisdictional defect in the Information, any error has been waived. *See Roth v. State,* 714 P.2d 216 (Okl.Cr.1986). Finding no jurisdictional defect, this assignment is dismissed.

■ Appellant next argues that the trial court erred in refusing to issue his Proposed Instruction No. 1 concerning the use of other crimes evidence. The record reveals that the trial court rejected the proposed instruction because it believed Instruction No. 18 substantially covered the

---

1. Although this writer did not agree with the majority's disposition of the severance claim in *Middaugh, see id.* at 437 (Parks, J., concurring in part and dissenting in part), I am obligated to apply such analysis as a matter of *stare decisis.*

same area of law. Instruction No. 18 provided:

You are instructed that the defendant has admitted committing offenses other than those charged in the Information. You may not consider this evidence as in any way tending to prove his guilt or innocence of the specific offenses in the Information.

(O.R.58). Appellant's Proposed Instruction No. 1 mirrored the above instruction, but also included the following language:

... nor may you consider this evidence, in the event that you determine the Defendant is guilty, in determining the proper punishment to be assessed.

(O.R.36). The other crimes evidence alluded to in the these instructions was introduced through the testimony of appellant, who related such in an attempt to establish a partial alibi in Case No. CRF–88–4220 (obtained coin purses in drug transaction).

In his brief, appellant asserts that his requested instruction was necessary to prevent the jury from considering the evidence of other crimes on the issue of punishment. While we find that the trial court could properly have given appellant's requested instruction, we do not find that its failure to do so resulted in reversible error. Instruction No. 18 clearly apprised the jury that it could not consider the evidence of other crimes in reaching a verdict on guilt or innocence. Instruction No. 17 directed the jury in its consideration of alibi evidence. We find that these, as well as the other instructions given by the trial court, adequately guided the jury in its consideration of the other crimes evidence. Thus, we cannot say that the trial court abused its discretion in refusing appellant's requested instruction. *See Ray v. State,* 762 P.2d 274, 278 (Okl.Cr.1988).

■ In his fifth assignment, appellant alleges that prosecutorial misconduct deprived him of a fair trial. Initially, we find that all of the cited comments and actions of the prosecutor, with one exception, were either fair comments on the evidence or were not so grossly improper or unwarranted as to have affected the verdict. *See Hart v. State,* 749 P.2d 570, 571 (Okl.Cr.

1988). However, one of the prosecutor's comments warrants further discussion.

During closing argument, the assistant district attorney exclaimed:

And one last thing. It didn't take him very long, you know. It didn't take him very long at all to commit these crimes. To do what he did to these men. Didn't take too long at all. I ask you not to take too long either. You go back there, you make a finding of guilty based upon the facts and evidence....

(Tr.307). This comment is strikingly similar to one condemned by this Court in *Wright v. State,* 637 P.2d 869, 870 (Okl.Cr. 1981). Such a comment invades the province of the jury to thoroughly and conscientiously consider the evidence presented and we again denounce this type of prosecutorial argument. Unlike *Wright,* however, where the comment at issue was but a portion of a plethora of misconduct mandating reversal, we conclude that the misconduct in the case at bar did not determine the verdict or result in a miscarriage of justice. *See* 20 O.S.1981, § 3001.1.

Appellant finally maintains that the trial court exceeded its statutory authority in imposing the victims compensation assessments for his two burglary convictions. Title 21 O.S.Supp.1984, § 142.18(A), provides:

[A]ny person convicted of ... a felony involving criminally injurious conduct shall be ordered to pay a victim compensation assessment of at least Twenty-five Dollars ($25.00), but not to exceed Ten Thousand Dollars ($10,000.00), for each crime for which he was convicted....

"Criminally injurious conduct" is defined as "an act which occurs or is attempted ... that results in personal injury or death to a victim which is punishable by fine, imprisonment or death." 21 O.S.Supp.1987, § 142.3(5). Appellant argues that because the crimes of burglary were completed upon the breaking and entering into a dwelling with intent to commit a crime, said crimes could not have been the acts which resulted in personal injury or death within the meaning of Section 142.18(A). To fall within this statute, appellant con-

tends either that the injuries must have been inflicted prior to the commission of all the essential elements which constitute burglary, or that the injuries must have been the direct result of an act which satisfied one of the essential elements.

■ Initially, we do not find that the Oklahoma Legislature intended the Crime Victims Compensation Act, 21 O.S.1981, § 142.1 et seq., to apply only to those personal injuries or deaths which arise solely through the commission of a specific element of a crime. *See* Section 142.1 ("It is the intent of the Legislature to provide a method of compensating and assisting those persons who become victims of criminal acts and who suffer bodily injury or death ..."). It is the commission of a *criminal act* which results in injury or death of the victim, not the commission of the elements that constitute a particular crime, which falls within the purview of the statute. Stated otherwise, to be compensable under this Act, the injury or death must only have been inflicted during the course of criminal conduct set afoot by appellant and be causally related to such conduct. The injury or death need not be directly related to the commission of a particular essential element of a crime which is committed during the course of the criminal conduct and it is not necessary that the injury or death precede the performance of an act which constitutes the last essential element necessary to establish a crime.

■ With the foregoing in mind, we now address each of appellant's burglary convictions. In Case No. CRF–88–4220, appellant tied Mr. Banks' hands and feet with wire during the course of events which resulted in his burglary conviction. Appellant does not contend that the victim suffered no injuries as a result of such action and the record indicates that Mr. Banks

sustained at least some injuries during the episode. (Tr.95). Applying the above standards, we find that such personal injuries were causally related to the criminal conduct of appellant. Therefore, we cannot say that the trial court exceeded its statutory authority in ordering a victim's compensation assessment of five thousand dollars ($5,000.00) for the conviction of First Degree Burglary in Case No. CRF–88–4220.[2]

■ In Case No. CRF–88–3311, appellant broke into and entered Mr. Boggs' home, severely beat him, and took his wallet. For such conduct, appellant was convicted of both First Degree Burglary and Assault and Battery With Intent to Kill. It is readily apparent that the personal injury suffered by Mr. Boggs was not only causally, but directly, related to the assault and battery of him. Because appellant was separately convicted of this crime, we find that it, not the burglary, more appropriately served as the "felony involving criminally injurious conduct" within the meaning of Section 142.18(A). Therefore, the victims compensation assessment of ten thousand dollars ($10,000.00) for Count I is hereby MODIFIED to five hundred dollars ($500.00). *See* 21 O.S.Supp.1984, § 142.-18(B).

As MODIFIED, the Judgment and Sentence for Count I in Case No. CRF–88–3311 is AFFIRMED. The Judgments and Sentences for Count III in Case No. CRF–88–3311 and the conviction in Case No. CRF–88–4220 are AFFIRMED.

LANE, P.J., and BRETT, and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

2. Because appellant does not raise the issue, we specifically decline to address whether the assessment reflects the amount of the expenses actually incurred by Mr. Banks, 21 O.S.1981, § 142.1, or whether the trial court properly considered "factors such as the severity of the crime, the prior criminal record, and the ability of the defendant to pay, as well as the economic impact of the victim compensation assessment on the dependents of the defendant." 21 O.S.Supp.1984, § 142.18(A).